MILES REALTY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51394. Promulgated October 25, 1934.

Geo. S. Atkinson, Esq., and H. V. Robertson, C. P. A., for the petitioner.

P. A. Bayer, Esq., and R. P. Hertzog, Esq., for the respondent.

OPINION.

ADAMS: This case involves deficiencies in income tax for the calendar years 1926 and 1927 in the amounts of $570.28 and $6,440.13, respectively. The material facts have been stipulated in writing and are adopted by reference as our findings. So much thereof as may be necessary will be referred to in this opinion, together with other findings we may make.

The petitioner during the taxable years and prior thereto was a corporation organized and existing under the laws of the State of Texas and was engaged in the business of promoting, subdividing, and selling real estate in or adjacent to Amarillo, Texas. The lots were usually sold on the installment basis under contracts which contained the following provision:

If said purchaser shall fail to make any of the payments of principal or interest as herein provided; or shall perform or allow to be performed, any breach of the restrictions hereinafter contained, he agrees to give immediate possession of said property; and all amounts paid by said purchaser together with all improvements on said land. shall be retained by the seller as liquidated damages, and this contract shall thereafter be null and void and of no further effect without any act on the part of the seller.

During the years 1926 and 1927 the petitioner sold a large number of lots on the installment plan, and, in accordance with a provision of the contracts which required payment of 50 percent of the purchase price before the purchaser was entitled to a deed, no conveyances of title were made.

Petitioner's books and its income tax returns were kept and made on the installment sales basis. A number of the purchasers of lots defaulted in payments during 1926 and others during the year 1927. No affirmative action of any kind was taken by the petitioner during either of those years to forfeit the payments made prior to the defaults, nor to cancel the installment contracts either by the board of directors, or otherwise. No entries were made on the books declaring or indicating a cancellation and forfeiture, nor were any steps taken to repossess the property.

The lots were sold by two real estate agencies, which also looked after and made collections of the installment payments, reporting the results from time to time to the petitioner.

It was the policy and practice of petitioner not to declare forfeitures and cancellation of contracts until it was convinced or notified that purchasers did not intend to perform and complete their contracts. Until such time it and its agents frequently made efforts to collect past due installments.

In 1928 the petitioner took over from the real estate agents all contracts and pass books and undertook the collections itself. After an examination of these and the accounts and further attempts at

collections, in all cases where it appeared certain that no more payments would be made, forfeitures and cancellations were entered on petitioner's books.

It is the contention of the respondent that whenever a default in payment occurred *eo instanti*, the contract by its terms became null and void and payments theretofore made became the property of petitioner and income to it in the year when the default occurred without any action whatever on the part of petitioner or any other person. In conformity therewith, respondent added to petitioner's income for 1926 the sum of $1,231.99, and for 1927 the sum of $6,443.09. It is the position of the petitioner that the profits from these forfeitures and cancellations were income to it in 1928 when they were declared and its returns were made accordingly. It seems to us that the petitioner is correct. In *Inland Finance Co.*, 23 B. T. A. 199, we had before us the case of a corporation which sold its capital stock on an installment plan contract, which provided that if the purchaser failed to pay any of the installments and the default should continue for 30 days, the company could at its option terminate the agreement and all rights of the subscriber thereunder and hold all sums paid thereunder as liquidated damages.

A number of subscribers defaulted in payments and at meetings of the stockholders of the corporation resolutions were adopted canceling the defaulted contracts. It appeared from the evidence that any holder of these stock subscription agreements who desired to pay up the back payments due on his contract at the time it was canceled was allowed to do so, and no other method of attempting to cancel the contracts on account of defaults in payment was ever taken, except the resolutions of the stockholders. Under these circumstances, we held that the forfeited payments were not income to the taxpayer.

That case was affirmed in *Commissioner* v. *Inland Finance Co.*, 63 Fed. (2d) 886, where the court said:

The Commissioner contends that, after corporate action had been taken canceling the subscription agreements, the amounts forfeited thereunder became the absolute property of the taxpayer, without qualification or condition, that is, not subject to reinstatement, and that therefore the forfeited payments were income. Although the subscription agreements contained no provision for reinstatement after cancellation, the evidence, as we have just seen, discloses that the agreements were subject to reinstatement at any time at the option of the subscriber, and that some of the agreements were reinstated. For these latter, the Commissioner made proper allowance in computing the asserted tax. In any event, we are of opinion that the Board correctly determined that the forfeited payments did not constitute " income " as the term has been defined, namely, gain derived from capital or labor, or from both combined. *Eisner* v. *Macomber*, 252 U. S. 189, 207.

While that case relates to a capital stock transaction, the principle relative to the cancellation and forfeiture under the subscription agreements applies equally here, viz., that the forfeiture is not com-

plete while the purchaser has the right to reinstate. In the instant case it is clear that petitioner's vendees had the right to reinstate during the taxable years and were urged to do so.

It has been often written and decided that forfeitures are not favored in the law. Forfeiture clauses such as the one involved here are exclusively for the benefit of the vendor and he may enforce it or not as he chooses. We think the general rules are stated correctly in the following quotations from 66 Corpus Juris:

Sec. 357. As a general rule, the contract provision giving the vendor the option to forfeit and terminate the contract on default by the vendee is a provision made for the benefit of the vendor, not for the benefit of the vendee, and the vendor may exercise the privilege or not as he sees fit. Likewise, where the contract provides that on default by the purchaser the contract shall be void, the contract is void only at the election of the vendor.

Sec. 358. Ordinarily, if the vendor desires to rescind or forfeit a contract of sale and payments thereunder for default in performance, notice of his intention must be given.

Sec. 359. Whether time is or is not of the essence of the contract, if the vendor has waived strict compliance with the terms of the contract as regards time of payment, he cannot thereafter rescind or forfeit the contract without giving notice of his intention to do so.

It seems to us that under the facts of this case, the contracts were voidable only and that as petitioner not only took no steps to enforce the forfeiture, but after default endeavored to make further collections, forfeitures did not occur until 1928, when the contracts were formally canceled on the books. It follows that the action of respondent was erroneous. Certain adjustments will be required under the stipulation of facts, and for that reason,

*Decision will be entered under Rule 50.*